UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS DE MARCH BOSCH, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>CREDIT SUISSE GROUP AG, THOMAS P. GOTTSTEIN, and DAVID R. MATHERS,<br><br>        Defendants. | Case No: 1:22-cv-02477 (ENV) (RLM) |

**<u>MEMORANDUM OF LAW IN OPPOSITION TO YANSI JIMENEZ'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL</u>**

 

**CAHILL GORDON & REINDEL LLP**
Herbert S. Washer
Sheila C. Ramesh
Adam S. Mintz
32 Old Slip
New York, New York 10005
(212) 701-3000
hwasher@cahill.com
sramesh@cahill.com
amintz@cahill.com

*Attorneys for Defendants Credit Suisse Group AG, Thomas P. Gottstein, and David R. Mathers*

Defendants Credit Suisse Group AG ("Credit Suisse"), Thomas P. Gottstein, and David R. Mathers (collectively, "Defendants") respectfully submit this brief in opposition to Yansi Jimenez's ("Jimenez") Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel (Dkt. 6-2) ("Brief" or "Br."), as requested by this Court at the telephonic conference held on July 27, 2022 (the "July 27 Hearing").

## PRELIMINARY STATEMENT

Mr. Jimenez takes the surprising position that the Private Securities Litigation Reform Act ("PSLRA") does not afford this Court the discretion to deny his motion for lead plaintiff. This argument contradicts the fundamental purpose of the PSLRA: to eliminate abusive practices in securities litigation. *See In re Crayfish Co. Sec. Litig.*, 2002 WL 1268013, at *3 (S.D.N.Y. June 6, 2002) ("[T]he PSLRA [was enacted] in response to perceived abuses in securities fraud class actions . . . [and] the belief that the plaintiff's bar had seized control of class action suits, bringing frivolous suits on behalf of only nominally interested plaintiffs in the hopes of obtaining a quick settlement."). This is precisely the type of case that the PSLRA was intended to root out.

The plain language of the statute confirms this purpose by requiring courts to *consider* motions for appointment of lead plaintiff, not grant them. The statute also requires that an applicant for lead plaintiff satisfy certain specific criteria, including that he be an adequate representative of the class as required by Rule 23 of the Federal Rules of Civil Procedure. Mr. Jimenez claims that he has demonstrated his adequacy by showing that he has a sufficient interest in this litigation. But Mr. Jimenez only alleges that he suffered damages of, at best, $621 (and, as discussed below, more likely $42). These alleged damages are far lower than amounts that other courts have found insufficient to demonstrate a plaintiff's adequacy. Mr. Jimenez offers no basis to ignore that authority.

1

Denial of Mr. Jimenez's motion also serves the interests of justice. An individual with a *de minimis* financial stake in a purported securities class action cannot serve as lead plaintiff. The PSLRA defines the most adequate lead plaintiff in a private action as the person who "has the largest financial interest in the relief sought by the class" because it recognizes the importance of the size of the lead plaintiff's investment in assessing his ability to represent the interests of a class. The fact that Mr. Jimenez's *de minimis* loss is the largest of any applicant demonstrates the weakness of the claims at issue here, as the Court recognized at the July 27 Hearing. *See* Tr. of July 27 Hearing at 7:4-8 ("Tr.") ("[T]he fact that there is a single application in this case, a named plaintiff who reportedly is unwilling to step up to the plate and a single motion by a movant whose losses total $621, all of those factors give the Court significant pause."). Mr. Jimenez cannot reasonably dispute that the Court has the discretion to dismiss a case where, as here, allowing it to proceed would waste the resources of the Court and the parties. *Fitzgerald* v. *First East Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[A]s courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources.").

Finally, Mr. Jimenez's challenge of Defendants' standing to oppose the motion is both legally incorrect and irrelevant. While Defendants have standing to oppose Mr. Jimenez's motion, there is no reason for this Court to reach that issue because it has the authority to request briefing from all parties to ensure a fulsome development of the issues, which is precisely what the Court did at the July 27 Conference.

Mr. Jimenez's motion to serve as lead plaintiff should be denied.

## ARGUMENT

### I. THE PSLRA PROVIDES THIS COURT WITH THE DISCRETION TO DENY THE MOTION

At the July 27 Conference, Mr. Jimenez asserted that because no one else has sought appointment as lead plaintiff of the proposed class, the PSLRA requires this Court to appoint him as lead plaintiff. A plain reading of the PSLRA confirms that the Court is under no such obligation:

> Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court **shall consider** any motion made by a purported class member . . . and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . . in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added). The statute requires courts to consider applications for lead plaintiff. It does not require courts to grant those motions.

Mr. Jimenez nevertheless attempts to argue that the PSLRA requires his appointment here as the sole applicant for lead plaintiff by relying on language in the statute that states that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i); *see also* Supplemental Memorandum of Law in Further Support of Motion of Yansi Jimenez for Appointment as Lead Plaintiff and Approval of Lead Counsel (Dkt. 15) ("Supp. Br.") 2. But, as Mr. Jimenez concedes, the Court is only obligated to appoint an individual as lead plaintiff who "meets the PSLRA's criteria," which includes Rule 23's adequacy and typicality requirements. Supp. Br. 2, 4. Because Mr. Jimenez does not satisfy that standard, he cannot serve as lead plaintiff here.

The purpose of the PSLRA is to stem the filing of frivolous lawsuits by plaintiffs with nominal interests in the underlying causes of action. *Silverberg* v. *Dryships Inc.*, 2018 WL 10669653, at *4 (E.D.N.Y. Aug. 21, 2018) ("Congress enacted the PSLRA in 1995 to address

3

perceived abuses in securities fraud class actions created by lawyer-driven litigation . . . [and] ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs [sic] counsel."). The statute requires courts to take an active role in the selection of a lead plaintiff to ensure that does not happen. *See Weltz* v. *Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (observing that the PSLRA requires that courts take an active role and exercise greater supervision in the selection of lead plaintiffs). Mr. Jimenez's claim that the PSLRA requires courts to appoint a lead plaintiff even where the applicant is, as here, obviously inadequate, contradicts this fundamental premise. Under Mr. Jimenez's proposed interpretation, courts would be required to permit plainly inadequate lead plaintiffs to clog the courts with meritless lawsuits. This is precisely the opposite of what Congress intended when enacting the PSLRA. *See Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (one of the purposes of the PSLRA was "to curb frivolous, lawyer-driven litigation").

Mr. Jimenez's argument is further undermined by the fact that courts routinely evaluate whether an unopposed applicant for lead plaintiff satisfies Rule 23's adequacy and typicality requirements. *See, e.g.*, *Salim* v. *Mobile Telesystems PJSC*, 2019 WL 11095253, at *2 n.3 (E.D.N.Y. Sep. 11, 2019) ("Under the PSLRA, a court is required to conduct this two-step analysis even when, as is the case here . . . a movant's motion to appoint a lead plaintiff is unopposed."); *City of Warren Police* v. *Foot Locker, Inc.*, 325 F. Supp. 3d 310, 314 (E.D.N.Y. 2018) ("Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff.").

As a result of the need to assess the adequacy and typicality of lead plaintiff candidates at this stage, at least two courts have denied motions for appointment of a lead plaintiff where none

4

of the movants satisfied Rule 23's requirements. *See, e.g.*, *Finocchiaro* v. *NQ Mobile, Inc.*, 2016 WL 7031613, at *3 (S.D.N.Y. Dec. 1, 2016) (denying the only movant's motion to be appointed as lead counsel, holding that he was not an adequate class representative due to conduct demonstrating his animus toward the defendant); *In re Century Business Services Sec. Litig.*, 202 F.R.D. 532, 537 (N.D. Ohio 2001) (concluding that none of the four groups seeking appointment as lead plaintiff satisfied Rule 23's requirements, including one group that had "suffered a nominal loss in comparison to the other competing groups"). The same result should follow here.

## II. MR. JIMENEZ IS NOT AN ADEQUATE LEAD PLAINTIFF

This Court should exercise its discretion under the PSLRA to deny Mr. Jimenez's motion because he lacks the requisite interest in the litigation and, therefore, is not an adequate class representative.

Mr. Jimenez claims to have purchased 200 shares of Credit Suisse stock and suffered a loss of $621. Br. 7; Dkt. 6-4. He calculates his losses by subtracting the amount received when he sold his 200 shares on June 6, 2022 from the amount spent when he purchased them on April 26, 2021. Dkt. 6-4. However, "a plaintiff in a private securities fraud action can recover only if the plaintiff adequately alleges and proves that the defendant's fraudulent conduct proximately caused the plaintiff's economic loss . . . reasoning [that] applies with equal force to a motion to appoint [lead plaintiff and] lead counsel." *Skeels* v. *Piedmont Lithium Inc.*, 2022 WL 1236797, at *3 (E.D.N.Y. Feb. 4, 2022) (concluding that losses that cannot be proximately linked to the alleged misconduct are not recoverable and should not be included in any calculation of financial loss); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) ("[T]o establish loss causation . . . plaintiffs [are required to] disaggregate those losses caused . . . from disclosures of the truth behind the alleged misstatements" and losses caused from other factors).

5

Here, the Complaint only alleges that Defendants' purported misrepresentations caused Credit Suisse's stock price to decline $0.21 on a single day, March 28, 2022. Compl. ¶ 9-10. As a result, Mr. Jimenez's losses are, at most, $0.21 for each of his 200 shares, which comes out to a total of $42 in damages.

Regardless, whether Mr. Jimenez suffered damages of $621 or $42, his interest is far too small to allow him to adequately represent the class. Although Mr. Jimenez argues that he should be appointed because he "by default has the largest financial interest of any applicant" (Supp. Br. 3), in fact, his *de minimis* financial interest is disqualifying.

Appointing a lead plaintiff with such a minimal financial interest in a large securities class action like this is inappropriate because it "could cause [his] interests to diverge from those of the class." *In re Nice Systems Sec. Litig.*, 188 F.R.D. 206, 221 (D.N.J. 1999). The very reason that Congress included in the PSLRA a requirement that "the shareholder with the largest financial interest" be appointed was to avoid precisely this type of situation where "a named class representative has a minimal financial stake in the case and acts primarily as a tool of the lawyers who may well have recruited him." *Bensley* v. *FalconStor Software, Inc.*, 277 F.R.D. 231, 234 n.8 (E.D.N.Y. 2011) (denying application of lead plaintiff candidate that purchased and sold shares before the revelation of the alleged fraud in part due to concerns that if appointed lead plaintiff but later determined to be unable to prove loss causation, the entire case could be dismissed or the appointment process would need to be repeated).

None of the cases on which Mr. Jimenez relies supports his appointment as lead plaintiff. In three of those cases, the courts overlooked modest alleged damages in appointing lead plaintiffs who had demonstrated a strong interest in the outcome of the litigation by at the very least, filing the complaint. *In re Kirkland Lake Gold Ltd. Sec. Litig.*, 2020 WL 10692524, at *1 (S.D.N.Y.

6

Sept. 24, 2020); *Hardy* v. *Embark Technology, Inc.*, 3:22 Civ. 2090 (N.D. Cal. July 7, 2022), Dkt. 24; *Torres* v. *Berry Corp.*, 3:20 Civ. 3464 (N.D. Tex. Aug. 18, 2021), Dkt. 45.  Mr. Jimenez neither filed the complaint nor did he cause the notice of the litigation to be published.  In the other case cited by Mr. Jimenez, the alleged class period spanned only two days and involved significantly lower stakes than those at issue here.  *Montag* v. *Wolkswagen AG*, 2021 WL 3930607, at *1 (C.D. Cal. July 21, 2021).

      Mr. Jimenez has done nothing to demonstrate that he has any interest in the outcome of this litigation.  He stepped forward to serve as lead plaintiff only after the plaintiff who initially filed this case (Carlos de March Bosch), who had a claim 200 times the size of Mr. Jimenez (Dkt. 1 at 32), had a change of heart.  Dkt. 14.  In the absence of prior involvement or any real financial interest, it is reasonable to question whether Mr. Jimenez will be motivated to actively guide the litigation of this matter for the benefit of a class.  It is also reasonable to question the merits of a case where no one with any meaningful financial interest is willing to step forward and serve as lead plaintiff.  *See* Tr. at 7:4-8.

      For these reasons, courts have routinely denied lead plaintiff status to applicants with little to no losses.  *See, e.g.*, *Richman* v. *Goldman Sachs Group, Inc.*, 274 F.R.D. 473, 477 (S.D.N.Y. 2011) (denying individual investor's motion to be appointed as lead plaintiff because "the dollar amount and her 'financial interest' are minimal to the point of being *de minimis*" and "[h]er proposed relief would result in a very tiny tail wagging a very large dog . . . [and] put an individual plaintiff in charge of a litigation that Congress has instructed should be guided by institutional investors); *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015) (concluding that the financial interests of three lead plaintiff candidates that alleged losses under

$200,000 were "far too small, relative to the other lead-plaintiff candidates, for them to credibly bid for appointment").

Indeed, in some cases, courts have appointed no lead plaintiff at all. *See, e.g.*, *Century*, 202 F.R.D. at 536 (denying all lead plaintiff applications including where one of the applications was by a plaintiff with a *de minimis* interest in the litigation).

### III. THE INTERESTS OF JUSTICE AND JUDICIAL ECONOMY FAVOR DENYING THE MOTION

Denying the motion also serves the interests of justice and judicial economy. Mr. Jimenez argues that if the motion is denied it will effectively end this litigation and result in a new action being filed by another plaintiff. Supp. Br. 5. That is not a basis for allowing this litigation to continue. Mr. Jimenez is not an adequate representative of the class, and permitting him to pursue litigation would waste the time and resources of the Court and the parties. *See Century*, 202 F.R.D. at 541 (declining to appoint any lead plaintiff because "[g]iven the choice between appointing a lead plaintiff that jeopardizes the finality of class certification, and appointing a co-lead plaintiff structure that thwarts the goals of the Reform Act, the Court chooses 'none of the above.'").

Moreover, denying Mr. Jimenez's motion would not prejudice the proposed class. Mr. Jimenez claims that the denial of his motion would prejudice the proposed class by delaying the adjudication of this case and that even if his application is denied, another plaintiff would soon come forward to replace him. Even setting aside the fact that no other plaintiff has come forward to date, Mr. Jimenez also fails to explain how a modest delay would prejudice the proposed class. The statute of limitations for Section 10(b) and 20(a) claims is two years, affording plenty of time for an adequate lead plaintiff to step forward if one so chooses. *See Charles Schwab Corp.* v. *Bank of America Corp.*, 883 F.3d 68, 94 (2d Cir. 2018) ("Securities Exchange Act claims sounding in

8


fraud must be filed within the earlier of five years from the alleged violation or two years 'after discovery of the facts constituting the violation.'").

## IV. THIS COURT NEED NOT DECIDE WHETHER DEFENDANTS HAVE STANDING TO OPPOSE THE MOTION

Unable to put forward an adequate argument for his appointment as lead plaintiff, Mr. Jimenez falls back on the position that Defendants lack standing to oppose this motion. Supp. Br. 5-6. But this Court need not resolve the issue because regardless of whether Defendants have standing (which they do), this Court has the discretion, which it exercised at the July 27 Conference, to request briefing from Defendants to ensure a complete and fulsome development of the issues raised by Mr. Jimenez's motion. *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust* v. *LaBranche & Co.*, 229 F.R.D. 395, 406 (S.D.N.Y. 2004) (holding that defendants have standing to be heard during the appointment process); *see also Fields* v. *Biomatrix, Inc.,* 198 F.R.D. 451, 454 (D.N.J. 2000) (concluding that a court may *sua sponte* consider issues relating to the appointment of a lead plaintiff). Because "the PSLRA requires Courts to take a more active role in supervising the process of selecting lead plaintiffs," courts typically consider "information provided by the defendants useful in rendering its decision, regardless of whether or not they have standing to formally oppose plaintiffs' motion." *Funke* v. *Life Financial Corp.*, 2003 WL 194204, at *4 n.8 (S.D.N.Y. Jan. 28, 2003). This is especially true where, as here, no other proposed lead plaintiff has come forward and the "[c]ourt must rely on the defendants to ensure that the requirements of [the PSLRA] are satisfied." *City of Pontiac General Employees' Retirement System* v. *Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 501 n.3 (S.D.N.Y. 2012).

In any event, if the Court were to consider the issue, Defendants have standing to oppose the motion. The only cases Mr. Jimenez cites to suggest otherwise are outside the Second Circuit

9

(Supp. Br. 5-6), which is unsurprising given that courts in this Circuit have repeatedly held that defendants have standing to challenge motions for appointment of lead plaintiff. *See In re Luxottica Group, S.p.A. Sec. Litig.*, 2004 U.S. Dist. LEXIS 21130, at *9 (E.D.N.Y. Oct. 22, 2004) (holding that defendants have standing to be heard during the appointment process); *Pirelli*, 229 F.R.D. at 406 (concluding that defendants have standing to be heard during the appointment process). This is because "the purpose of the PSLRA in preventing lawyer-driven litigation is best served by having more argument, not less, from any interested source" and "there is no textual provision in the PSLRA that precludes a defendant from filing its opposition to a motion to appoint lead plaintiff or lead counsel." *City of Pontiac*, 844 F. Supp. 2d at 501 n.3 (holding that defendants have standing to challenge a motion for appointment as lead plaintiff); *see also King* v. *Livent, Inc.*, 36 F. Supp. 2d 187, 190 (S.D.N.Y. 1999) (concluding that permitting defendants to be heard on the appointment process furthers the goals of the PSLRA).

## CONCLUSION

Mr. Jimenez's motion for appointment as lead plaintiff should be denied.

Dated: August 10, 2022                    **CAHILL GORDON & REINDEL LLP**

/s/ Herbert S. Washer
Herbert S. Washer
Sheila C. Ramesh
Adam Mintz
32 Old Slip
New York, New York 10005
(212) 701-3000
hwasher@cahill.com
sramesh@cahill.com
amintz@cahill.com

*Attorneys for Defendants Credit Suisse Group AG, Thomas P. Gottstein, and David R. Mathers*

10